UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEBORAH J. PEARSON,

                            Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
_____

DECISION & ORDER

19-CV-6184MWP

**PRELIMINARY STATEMENT**

        Plaintiff Deborah J. Pearson ("Pearson") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 1, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 17).

        Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 10, 13). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

**DISCUSSION**

**I.      Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the Listings in Appendix 1 of Subpart P of Part 404 of the relevant regulations;

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform his or her past work; and

(5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t

3

step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.     The ALJ's Decision

In her decision, the ALJ followed the required five-step analysis for evaluating disability claims. (Tr. 13-21).[1] Under step one of the process, the ALJ found that Pearson had not engaged in substantial gainful activity since the alleged onset date. (*Id.*). At step two, the ALJ concluded that since the alleged onset date of February 9, 2015, Pearson had the severe impairment of diabetes mellitus type II. (*Id.*). Beginning on October 4, 2017, the established onset date, Pearson had the severe impairments of diabetes mellitus type II and osteoarthritis of the left hip. (*Id.*). The ALJ determined that Pearson's other alleged impairments, including degenerative disc disease of the cervical and lumbar spine, vision loss, hypertension, status right foot bunion surgery, right thumb pain and catching, and right ear canal surgery were nonsevere. (*Id.*). At step three, the ALJ determined that Pearson did not have an impairment (or combination of impairments) that meets or medically equals one of the listed impairments. (*Id.*). The ALJ concluded that prior to October 4, 2017, Pearson had the RFC to perform light work but had to avoid exposure to unprotected heights and heavy machinery and be permitted the freedom to sit or stand at will, and could only occasionally crawl, stoop, kneel, and crouch. (*Id.*). Beginning on October 4, 2017, the ALJ determined, Pearson had the RFC to perform sedentary work, but would be off task up to ten percent of the workday, had to avoid exposure to unprotected heights and heavy machinery and be permitted the freedom to sit or stand at will,

---

[1] The administrative transcript shall be referred to as "Tr. __."

and could only occasionally crawl, stoop, kneel, and crouch.  (*Id.*).  At step four, the ALJ determined that prior to October 4, 2017, Pearson was capable of performing past relevant work as a babysitter and therefore was not disabled.  (*Id.*).  According to the ALJ, beginning on October 4, 2017, Pearson's RFC rendered her disabled pursuant to application of the Medical Vocational Guidelines (the "Grid"), specifically Grid Rule 201.06, 20 C.F.R. Part 404, Subpart P, Appendix 2.  (*Id.*).

### III.     Pearson's Contentions

Pearson contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error.  (Docket ## 10-1, 16).  According to Pearson, the ALJ failed properly to apply Social Security Rule ("SSR") 83-20 in determining her onset disability date.  (Docket # 10-1 at 17-21).  Pearson also maintains that several of the ALJ's RFC conclusions were unsupported by any medical opinions or by substantial evidence.  (Docket ## 10-1 at 12-16, 22-27; 16 at 1-8).  She also challenges the ALJ's evaluation of her subjective complaints, maintaining that it lacked adequate explanation.  (Docket # 10-1 at 27-30).  Finally, Pearson contends that the ALJ failed to resolve inconsistencies between the Dictionary of Occupational Titles ("DOT") and testimony provided by the vocational expert.  (Docket ## 10-1 at 23-24; 16 at 8-10).

The Commissioner maintains that the ALJ's determination is supported by substantial evidence and is not the product of legal error.  (Docket # 13).  According to the Commissioner, the ALJ's RFC conclusions were well-supported by the record, including the opinions of two consulting physicians.  (*Id.* at 17-27).  With respect to the onset date, the Commissioner maintains that the ALJ adequately explained the basis of her conclusion that as of

5

October 4, 2017 Pearson had a more restrictive RFC that precluded her ability to work.  (*Id.* at 24-27).  The Commissioner further contends that there was no conflict between the vocational expert's testimony and the DOT.  (*Id.* at 28-31).  Finally, the Commissioner maintains that the ALJ's evaluation of Pearson's subjective complaints was supported by substantial evidence.  (*Id.* at 32-35).

## IV.     Analysis

Although Pearson raises a variety of challenges to the unfavorable portions of the ALJ's partially favorable determination, the crux of Pearson's challenge is that the ALJ failed to adequately explain why she determined that Pearson was limited to sedentary work beginning on October 4, 2017, but not before that date.  (Docket # 13).  Having reviewed the ALJ's decision and the record evidence, I agree with Pearson that the ALJ failed to provide a sufficient rationale for her twin determinations that Pearson's became disabled on October 4, 2017, and that Pearson's subjective allegations of disability prior to that date were not credible.  Accordingly, remand is appropriate for the ALJ to provide a rationale in support of these conclusions.

The onset date for a claimant's disability "is the first date on which [she] is unable to engage in any substantial gainful activity" for no less than twelve months as a result of a "medically determinable physical or mental impairment."  *McCall v. Astrue*, 2008 WL 5378121, *17 (S.D.N.Y. 2008) (quotation omitted).  Social Security Ruling ("SSR") 83–20, outlines instructions on how to determine the onset date of a disability.  *See* SSR 83-20, 1983 WL 31249 (SSA 1983).[2]  For disabilities of non-traumatic origin, as here, "the determination of onset

---

[2] SSR 83-20 was rescinded and replaced on October 2, 2018, after the ALJ's decision was issued.  *See* SSR 18-01P, 2018 WL 4945639 (SSA 2018).

6

involves consideration of the applicant's allegations, work history, if any, and the medical or other evidence concerning impairment severity." *See id.*

The determination of the date of onset of disability is a fact-driven inquiry, and the responsibility of assessing and weighing the evidence lies with the ALJ. *See McCarthy v. Astrue*, 2007 WL 4444976, *9 (S.D.N.Y. 2007). Accordingly, where an ALJ must infer the onset date, the date selected should "depend[] on an informed judgment of the facts in the particular case[,] . . . must have a legitimate medical basis[,] . . . [and] the ALJ must give a convincing rationale for the onset date ultimately selected." *See Feliciano v. Colvin*, 2016 WL 4272375, *5 (S.D.N.Y. 2016).

An evaluation of subjective complaints should reflect a two-step analysis. *See* 20 C.F.R. §§ 404.1529, 416.929.[3] First, the ALJ must determine whether the evidence reflects that the claimant has a medically determinable impairment or impairments that could produce the relevant symptom. *See id.* Next, the ALJ must evaluate "the intensity, persistence, or functionally limiting effects of [the] symptom[s]." *Id.* The relevant factors for the ALJ to weigh include:

> (1) [the claimant's] daily activities; (2) [t]he location, duration, frequency and intensity of [the claimant's] pain or other symptoms; (3) [p]recipitating and aggravating factors; (4) [t]he type, dosage, effectiveness, and side effects of any medication the claimant take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms; (5) [t]reatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms; (6) [a]ny measures [the claimant] us[es] or ha[s] used to relieve [his or her] pain or other symptoms . . . ; and (7) [o]ther

---

[3] The evaluation of symptoms outlined in these regulations was previously referred to as a "credibility" assessment. Recent guidance has clarified that the sub-regulatory policy will no longer use the term "credibility" because "subjective symptom evaluation is not an examination of an individual's character." *See* SSR 16-3p, 2017 WL 5180304, *1 (Oct. 25, 2017).

>   factors concerning [the claimant's] functional limitations and
>   restrictions due to pain or other symptoms.

*See* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii)).

"If, after considering [claimant's] subjective testimony, and the objective medical evidence and any other factors deemed relevant, the ALJ rejects [the claimant's] subjective testimony, [s]he must explain that decision explicitly and with sufficient specificity that a reviewing court may be able to decide whether there are legitimate reasons for the ALJ's disbelief and whether h[er] decision is supported by substantial evidence." *Norman v. Astrue*, 912 F. Supp. 2d 33, 43 (S.D.N.Y.2012) (quotations omitted). If the ALJ's evaluation of a claimant's subjective complaints is not sufficiently detailed so as to "permit the reviewing court to determine whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence, remand is appropriate." *Fernandez v. Astrue*, 2013 WL 1291284, *18 (E.D.N.Y.2013).

As explained above, the ALJ has the discretion to reject a claimant's alleged onset date, as well as the claimant's subjective complaints, but the ALJ must provide a sufficient rationale to permit meaningful review of those determinations. In this case, the ALJ's failure to explain her reasoning requires remand. *See Spear v. Astrue*, 2014 WL 4924015, *20 (W.D.N.Y. 2014) ("[a] recitation of the evidence, without more, is insufficient to permit this [c]ourt to review the ALJ's credibility determination"); *Jeffcoat v. Astrue*, 2010 WL 3154344, *11 (E.D.N.Y. 2010) ("[t]he ALJ must provide a persuasive explanation behind his chosen onset date, if it is different from plaintiff's alleged onset date"); *McCall v. Astrue*, 2008 WL 5378121 at *17 ("[c]onvincing rationale must be given for the date selected") (quoting SSR 83–20)).

In her decision, the ALJ concluded that Pearson's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,] . . . [but that her]

8

statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported prior to October 4, 2017, for the reasons explained in this decision." (Tr. 18). My review of the remaining portions of the decision, however, does not identify the basis for the ALJ's determination. The ALJ further concluded that the record indicated "that beginning on October 4, 2017, the allegations regarding the symptoms and limitations are consistent with the objective medical and other evidence." (Tr. 19). Again, the ALJ does not provide any further explanation for her determination to credit Pearson's allegations beginning on October 4, 2017.

The decision is similarly devoid of any explanation for the ALJ's determination that Pearson's onset of disability occurred in October 2017, instead of February 2015 as Pearson alleged. Both the Commissioner and Pearson appear to agree that the ALJ inferred the onset date based upon her determination that Pearson's hip impairment became severe in October 2017, but not earlier. (Docket ## 10-1 at 14; 13 at 25). In determining that Pearson did not suffer from a "severe musculoskeletal impairment" prior to October 2017, the ALJ appears to rely heavily upon consultative examinations conducted in April 2014 (prior to the alleged onset date) and December 2015, which assessed mild limitations for walking, climbing, bending, and lifting. (Tr. 16 (citing Tr. 219-25, 356-59)). The subsequent determination that Pearson's hip impairment became severe in the fall of 2017 appears to be based upon imaging conducted in October 2017 demonstrating osteoarthritis in Pearson's hip and ongoing treatment beginning at that time to address Pearson's hip and back pain, including narcotic medication and physical therapy. (Tr. 19 (citing Tr. 368-71)).

As noted by Pearson, however, the records demonstrate that Pearson was managing her pain through the use of narcotics medications throughout 2016 and 2017. (Docket # 10 at 21 (citing Tr. 471-73, 475, 478, 481-83, 486, 490, 492, 495-96, 498-99). The ALJ does

9

not acknowledge or explain these treatment records in her decision.  Similarly, the record contains imaging results from 2013 (when Pearson was still working full-time as a machinist) and 2015 (when she alleges she was disabled) that similarly demonstrate degenerative changes suggestive of osteoarthritis in her hip.  (Docket # 10-1 at 18-19 (citing Tr. 245-46, 445, 519)).  Yet, the ALJ did not cite the images or attempt to explain why she found that the 2017 images were significant, assuming she did, but that the 2015 and 2013 images were not.

        The Commissioner explains at length the record evidence that appears to support the ALJ's onset date determination and evaluation of Pearson's subjective complaints, maintaining that both are fully supported by substantial evidence.  (Docket # 13 at 17-27).  Although the Commissioner may be correct –a finding I need not and do not make – the argument misses the mark.  The ALJ was required to provide a rationale supporting each of these determinations – one which would permit this Court to meaningfully review the basis for them.

        The Commissioner recounts Pearson's sparse treating history and argues that although Pearson's hip pain was aggravated in late 2015, she was able to adequately manage her pain through a regimen involving injections and narcotic pain medication and did not seek further treatment for her hip for the following two years.  (Docket # 13 at 25-27 (citing Tr. 19, 368-71, 444-45).  According to the Commissioner, not until the fall of 2017 when her hip pain became unmanageable with narcotic pain medication, did Pearson once again seek treatment, this time with unsuccessful results.  (*Id.* (citing Tr. 18-19, 368-71, 444-45).  The failure of that treatment to alleviate Pearson's pain, argues the Commissioner, prompted the ALJ to determine that Pearson's disability began in October 2017 and not before.  (*Id.*).  Although the Commissioner may have correctly divined the basis for the ALJ's determination, the ALJ is nonetheless required to provide the rationale in her decision.  The Commissioner's *post hoc*

rationale is simply insufficient. *See Whited v. Berryhill*, 2017 WL 2129492, *4 (W.D.N.Y. 2017) ("[t]he Commissioner attempts to provide support for the ALJ's credibility determination, . . . however, [a] reviewing court may not accept appellate counsel's *post hoc* rationalizations for agency action[;] . . . [t]he ALJ failed to consider the regulatory factors and specifically explain why he found [plaintiff's] statements concerning the limiting effects of her symptoms not credible"); *Bennett v. Astrue*, 2010 WL 3909530, *10 (N.D.N.Y. 2010) ("[c]redibility determinations are to be made by the ALJ in the first instance and rationales offered by the Commissioner post-hoc in an attempt to plug the holes in the ALJ's decision are not permissible"); *Telfair v. Astrue*, 2007 WL 1522616, *8 (S.D.N.Y. 2007) ("[t]he ALJ provided no basis for [the chosen disability onset date], much less a 'convincing rationale'[;] [o]n remand, the Commissioner should provide a rational explanation for why a particular disability onset date for the plaintiff is chosen").

Because I conclude that the ALJ failed to adequately explain her determination of Pearson's onset date and her evaluation of Pearson's subjective allegations, I am unable to subject the ALJ's RFC analysis to meaningful review, and I do not reach Pearson's remaining contentions regarding the ALJ's RFC assessment or the vocational expert's testimony at step five. *See Meadors v. Astrue*, 370 F. App'x 179, 185-86 (2d Cir. 2010) ("[b]ecause we conclude that the ALJ erred in assessing [claimant's] credibility, thereby depriving us of the ability to subject his RFC determination to meaningful review, we do not reach [claimant's remaining contentions]").

## **CONCLUSION**

Accordingly, the Commissioner's motion for judgment on the pleadings **(Docket # 13)** is **DENIED**, and Pearson's motion for judgment on the pleadings **(Docket # 10)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

                                                *s/Marian W. Payson*
                                                MARIAN W. PAYSON
                                            United States Magistrate Judge

Dated: Rochester, New York
         June 12, 2020